FILED & JUDGMENT ENTERED
Steven T. Salata

Jul 30 2012

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_Laura T. Beyer_
Laura T. Beyer
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| **SCOTTO RESTAURANT GROUP, LLC,** ) | Chapter 11 |
| ) | Case No. 11-40506 |
| Debtor. ) | |
| _____) | |
| ) | |
| **SCOTTO RESTAURANT GROUP, LLC,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Adversary Proceeding |
| v. ) | No. 12-3027 |
| ) | |
| **MISSION VALLEY BANK and** ) | |
| **ADVANCE RESTAURANT FINANCE, LLC,** ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**THIS MATTER** is before the court on the Plaintiff's Motion for Partial Summary Judgment ("Motion"). In the Motion, the Plaintiff seeks to have the court find that there are no genuine issues of material fact and that the Plaintiff is entitled to judgment as a matter of law that the Defendants do not have a valid security interest in the Plaintiff's collateral and are

therefore unsecured creditors. While the court agrees with the Plaintiff's argument that neither the January 24, 2008, financing statement nor the September 8, 2009, financing statement were effective to perfect the Defendants' lien, the Motion is denied due to unsettled factual issues regarding the Plaintiff's merger with a related entity, Scotto Holdings, LLC, in June 2009.

## FINDINGS OF FACT

1.   On June 21, 2006, Scotto Holdings, LLC ("Holdings"), submitted its first loan application to Defendant Advance Restaurant Finance, LLC ("ARF"). Holdings's first application sought a $30,000.00 loan.

2.   On January 22, 2008, Holdings submitted a second loan application. The second application sought a $50,000.00 loan. Holdings executed a Merchant Agreement, and the Plaintiff and Justin Scotto, a principal of the Plaintiff and Holdings, guaranteed the loan. The guarantee signed by the Plaintiff did not include language indicating a security agreement.

3.   On January 23, 2008, Justin Scotto executed Amendment F to the Merchant Agreement. Amendment F provided that the Plaintiff would serve as a "Secondary Payment Source" for the January 22, 2008, loan to Holdings.

4. On January 24, 2008, the LAP Group, LLC (apparently on behalf of the Defendants) filed a Financing Statement ("Financing Statement") against the Plaintiff.

5. Holdings received five additional loans from the Defendants from March 2008 through July 2009.

6. On June 1, 2009, Holdings and the Plaintiff merged. See Disclosure Statement and Plan of Reorganization at 3, In re Scotto Restaurant Group, LLC, No. 11-40506 (Bankr. W.D.N.C. May 1, 2012) ("Holdings merged into the Debtor on June 1, 2009.").

7. On or about August 29, 2009, the Plaintiff applied for a $126,000.00 loan with Defendant Mission Valley Bank ("Mission Valley"). The Plaintiff executed a Merchant Agreement in connection with this loan and granted the Defendants a security interest in personal property.

8. On September 8, 2009, Mission Valley filed an Amendment to the Financing Statement ("Amendment") with the North Carolina Secretary of State.

9. On June 25, 2010, the loan to the Plaintiff was amended to provide $150,000.00 in additional funds. According to the Plaintiff, the total amount of the loan after this amendment was $200,799.34.

10. On June 30, 2010, ARF began withdrawing weekly payments of $4000.00 from the Plaintiff's bank account.

3

11. On August 11, 2011, an Involuntary Petition was filed that began the Plaintiff's bankruptcy case.

## CONCLUSIONS OF LAW

12. The Financing Statement filed on January 24, 2008, did not perfect a lien in favor of the Defendants because the Defendants were not entitled to file the Financing Statement. North Carolina's version of the Uniform Commercial Code authorizes a creditor to file a financing statement if "[t]he debtor authorizes the filing in an authenticated record or pursuant to subsection (b) or (c) of this section" or the creditor holds an agricultural lien. N.C. Gen. Stat. § 25-9-509(a). The Plaintiff did not authorize the filing in an authenticated record, and the Defendants do not hold an agricultural lien.

13. Similarly, subsections (b) and (c) of section 25-9-509 do not authorize the filing. Subsection (b) states that a security agreement is implicit authorization to file a financing statement, but the Plaintiff did not sign a security agreement at this time. Subsection (c) defines the acquisition of collateral as implicit authorization for filing a financing statement, but the Plaintiff did not acquire collateral. Therefore, the Financing Statement was ineffective because "a filed record is effective only to the extent that it was filed

4

by a person that may file it under G.S. 25-9-509." N.C. GEN. STAT. § 25-9-510.

14. The parties to this dispute thoroughly briefed the issue of the Plaintiff's intent to authorize the filing of the Financing Statement (although the parties did not mention this issue in court). While a debtor's intent was of some significance to these issues under the prior version of the Uniform Commercial Code, a debtor's intent is irrelevant, or at best tangential, to the determination of whether a debtor authorized the filing of a financing statement under the current version of the Uniform Commercial Code as adopted by North Carolina:

> The prevailing codification "shifts the focus away from the intent of the parties and toward the economic realities of the transaction." The subjective intent of the parties has been soundly rejected as a determinant. "Reference to the intent of the parties led to unfortunate results" under the former UCC codification. "Accordingly, amended Section 1-201(37) [defining "signed" and codified in North Carolina at N.C. GEN. STAT. § 25-1-201(37)] deletes all references to the parties' intent." In sharp contradistinction, "the parties' expectations and predictions are properly considered objective facts" that reflect "the economic realities and context in which the agreement was made."

Michael J. Abatemarco & Anthony Michael Sabino, <u>"True Lease" Versus Disguised Security Interest: Is the United Trilogy Truly</u>

5

the Last Stand?, 40 UCC L.J. 445, 448–49 (2008) (citations omitted).

15. Since the Financing Statement is ineffective, so is the Amendment. See In re GG Moss Co., Inc., 9 B.R. 47, 51 (Bankr. E.D. Va. 1981) ("While an amendment to a financing statement may serve several purposes, it is an amendment which relates back to the original financing statement and cannot perfect a security interest if the original was defective."). While it appears that North Carolina's courts have not addressed the issue of whether an amendment can rehabilitate an ineffective financing statement, the plain language of the relevant statutes indicates that it cannot. For example, amendments must relate to a valid initial financing statement. See N.C. Gen. Stat. § 25-9-512. Similarly, although a debtor can file a "correction statement" if it believes a financing statement was filed in error, even a correction statement "does not affect the effectiveness of an initial financing statement or other filed record." N.C. Gen. Stat. § 25-9-518.

16. Nevertheless, the court cannot conclude that the Defendants' lien is entirely unperfected and therefore vulnerable to the Plaintiff's "strong-arm" powers pursuant to 11 U.S.C. § 544. While the parties only briefly mentioned the merger between the Plaintiff and Holdings, the Plaintiff's Disclosure Statement and Plan of Reorganization indicates that

6

the entities merged prior to the loan to the Plaintiff. In addition, Holdings borrowed money from the Defendants prior to the merger. The merger raises several questions that were not addressed by the parties. For example, did the Defendants file a valid financing statement against Holdings? Is the Plaintiff bound by a perfected lien of the Defendants against Holdings? See N.C. Gen. Stat. § 25-9-203(d) ("A person becomes bound as debtor by a security agreement entered into by another person if . . . [t]he person becomes generally obligated for the obligations of the other person, including the obligation secured under the security agreement, and acquires or succeeds to all or substantially all of the assets of the other person."). If the Plaintiff is bound by a lien against Holdings, what portion of the Defendants' claim is secured? In short, the impact of the merger on the Defendants' claim is a material issue of genuine fact that precludes summary judgment.

## CONCLUSION

Neither the Financing Statement nor the Amendment perfected the Defendants' lien against the Plaintiff's collateral. Without more, the Plaintiff could exercise its strong-arm powers under 11 U.S.C. § 544 to avoid the lien and render the Defendants' claim unsecured. Given the uncertainty surrounding the impact of the merger of the Plaintiff and Holdings on the Defendants' claim, however, the court cannot conclude that the

claim is entirely unsecured. Accordingly, the Plaintiff's Motion is hereby **DENIED**.

    **SO ORDERED.**

This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of the Order.

United States Bankruptcy Court